UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA for the use and benefit of GLF CONSTRUCTION CORPORATION | CIVIL ACTION |
| VERSUS | NO. 16-13022 |
| FEDCON JOINT VENTURE, ET AL | SECTION "R" (4) |

## ORDER AND REASONS

Before the Court is the motion of FEDCON Joint Venture, David Boland, Inc., JT Construction Enterprise Corporation, and Western Surety Company to stay pending the completion of contractual dispute resolution procedures.[1] For the following reasons, the Court GRANTS defendants' motion.

### I. BACKGROUND

This dispute arises out of a construction contract between the United States, by and through the US Army Corps of Engineers (USACE), and defendant FEDCON, a joint venture consisting of David Boland, Inc. and JT Construction.[2] On or about October 18, 2013, FEDCON was awarded a

---

[1] R. Doc. 8.
[2] R. Doc. 1 at 1-3 ¶¶ 2, 9.

contract (the Prime Contract) to perform all work on the "Resilient Features" project.[3] The contract called for repair and raising of substandard levees along a section of the Mississippi River in Plaquemines Parish, Louisiana.[4] As required by the Prime Contract, FEDCON executed and delivered to USACE a Miller Act payment bond, under which FEDCON and Western Surety bound themselves to pay the sum under the bond.[5]

On or about January 22, 2014, GLF Construction entered into a subcontract with FEDCON to furnish labor, materials, and services on the project and complete a portion of FEDCON's scope of work under the Prime Contract for the agreed price of $10,517,859.50.[6] In May of 2016, FEDCON terminated the subcontract with GLF Construction.[7]

On July 20, 2016, GLF Construction filed this Miller Act lawsuit alleging that FEDCON breached its subcontract with GLF Construction.[8] GLF Construction seeks payment under the Miller Act Bond, and also brings claims for breach of contract and unjust enrichment.[9] On October 19, 2016, the defendants filed a motion to stay, arguing that GLF Construction is

---

[3]  *Id.*
[4]  *Id.*
[5]  *Id.* ¶ 10; R. Doc. 1-1 at 1 (Miller Act Payment Bond).
[6]  R. Doc. 1 at 3-4 ¶ 11.
[7]  *Id.* at 11 ¶ 35.
[8]  *Id.* at 12 ¶ 37.
[9]  *Id.* at 12-16.

2

bound by the terms of the subcontract with FEDCON to stay any litigation until the completion of the dispute resolution procedures contained in the subcontract.[10]   GLF Construction filed a response in opposition,[11] and defendants replied.[12]

## II.   DISCUSSION

The Court has "broad discretion to stay proceedings as an incident to its power to control its own docket."  *Clinton v. Jones*, 520 U.S. 681, 706 (1997) (citation omitted); *see also United States v. Colomb*, 419 F.3d 292, 299 (5th Cir. 2005); *Ali v. Quarterman*, 607 F.3d 1046, 1049 (5th Cir. 2010) (recognizing that "district courts have inherent authority to control their dockets").  Further, in the decision of whether a stay should be granted, the Court is guided by the factors of judicial economy and convenience for the Court, for counsel, and for the parties.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  How this "can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  *In re Beebe*, 56 F.3d 1384, 1995 WL 337666, at *2 (5th Cir. 1995)

---

[10]   R. Doc. 8-1 at 1-2.
[11]   R. Doc. 12.
[12]   R. Doc. 19.

3

(quoting *Landis*, 299 U.S. at 254-55); *see also Kansas City So. R. Co. v. United States*, 282 U.S. 760, 763 (1931).

In their motion to stay, defendants argue that the subcontract between FEDCON and GLF Construction explicitly provides for a stay of all litigation against FEDCON and Western Surety in Paragraph 23.[13]  Paragraph 23 states:

> If the Prime Contract incorporated herein is one for which the Contractor has provided any bond(s) pursuant to 40 U.S.C. § 270a, the "Miller Act," . . . then the Subcontractor expressly agrees to stay any action or claim under this Subcontract Agreement against the Contractor and against the Contractor's surety and its Payment Bond and Performance Bond pending the complete and final resolution of the Prime Contractor's contractual remedial procedure or the Subcontract Agreement's mediation procedure, as required by Paragraph 13, above.[14]

Paragraph 13, in turn, explains the applicable dispute resolution provisions. It reads:

> A.  The contractual remedial procedure described in Section 00700 – Contractual Clauses, 52.233-1 Disputes. (Jul 2002) of the Prime Contract relating to claims for which [USACE] may be responsible is specifically incorporated herein by reference and made a part of this Subcontract Agreement.  The term "claim" as utilized in this paragraph shall include any request for monetary or other relief, claim, appeal, or action arising from the

---

[13]  R. Doc. 8-1 at 2-3. Defendants' motion also argues that a stay is proper because of a concurrent lawsuit filed by FEDCON against GLF Construction pending in state court in Florida. *Id.* at 3-4. The state court litigation has been dismissed on *forum non conveniens* grounds, and therefore this argument is moot. *See* R. Doc. 24-1 at 12.

[14]  R. Doc. 1-2 at 10 ¶ 23.

subcontractor for which [USACE] has, or may have, responsibility. The Subcontractor shall first pursue and fully exhaust said procedure before commencing any other action against the Contractor or its surety for any claims it may have arising out of its performance of the Work herein. Upon the Subcontractor's written request, the Contractor agrees to prosecute all claims submitted by the Subcontractor under the contractual remedial procedure of the Prime Contract on behalf of, and to the extent required by, the Subcontractor. . . . Final determination of the Subcontractor's claim(s) by the appropriate board or court shall be final and binding on the Subcontractor and the Contractor shall have no further liability, responsibility, or obligation to the Subcontractor except as may be otherwise provided in this Subcontract Agreement.[15]

GLF Construction does not dispute the validity or enforceability of Paragraph 13A. Instead, it argues that Paragraph 13A is not applicable because none of its claims against FEDCON "relate[s] to claims for which the Owner, the Corps of Engineers, may be responsible."[16] GLF Construction argues that defendants' motion neither asserts that USACE is responsible for GLF Construction's claims, nor contains evidence to support that contention.[17] First, the language of the Subcontract establishes that as long as USACE "has, *or may have*, responsibility" for GLF Construction's breach of contract and Miller Act claims, GLF Construction is contractually obligated to stay any litigation pending completion of the applicable dispute

---

[15] *Id.* at 7 ¶ 13.
[16] R. Doc. 12 at 4.
[17] *Id.* at 3.

5

resolution procedures.[18] The word "may" indicates that the liability or responsibility of USACE need not be established for Paragraph 13A to apply, but instead the responsibility or liability need only be a possibility. *See May*, Black's Law Dictionary (10th ed. 2014) (defining may as "to be a possibility"); *Merriam-Webster Dictionary Online*, www.merriam-webster.com (last visited February 6, 2017) (defining may as "used to indicate possibility or probability").

GLF Construction's claims against defendants arise out of defendants' alleged failure to construct a temporary access road and two temporary work platforms.[19] According to GLF Construction, FEDCON was responsible for this construction.[20] But the subcontract itself does not make clear that the road and work platform is FEDCON's responsibility. Instead, the subcontract merely notes that the access road and work platforms "will be performed by others."[21] Further, defendants submit the declaration of David Boland, president of David Boland, Inc., in which he attests that USACE has acknowledged at least partial responsibility for the conditions that form the

---

[18] R. Doc. 1-2 at 7 ¶ 13 (emphasis added); *see also id.* ("The contractual remedial procedure described in . . . the Prime Contract relating to claims for which *the Owner may be* responsible.") (emphasis added).
[19] R. Doc. 1 at 6-7 ¶¶ 19-24.
[20] R. Doc. 1 at 5 ¶ 15.
[21] R. Doc. 1-2 at 15.

6

basis of GLF Construction's claims.[22]  In support of this attestation, defendants also submit an April 7, 2016 letter from USACE to FEDCON in which USACE "acknowledges that the field surveyed locations of the protected side construction easement . . . differ from the layout shown on contract drawing C-102."[23]  Although GLF Construction contests Boland's declaration with a declaration of its own,[24] it did not address the April 2016 letter from USACE, and it has not negated the plausibility of USACE's responsibility.  Therefore Paragraph 13A applies, and GLF Construction is contractually bound to stay this litigation pending the completion of the applicable dispute resolution procedures.  *See United States v. Bhate Envtl. Assocs., Inc.*, No. 15-146, 2016 WL 544406, at *3 (D. Alaska Feb. 9, 2016) (in contractor-subcontractor breach of contract Miller Act dispute, finding it "entirely plausible that some, if not all, of the impacts alleged by [plaintiff] were the result of actions taken by the [Government]").

This finding is buttressed by other court decisions staying similar Miller Act proceedings based on either similar or identical language covering stays in the subcontract.  For example, in *United States v. David Boland,*

---

[22] R. Doc. 19-1 at 1 ¶ 2; *Id.* at 2-4 ¶¶ 5-12.
[23] *Id.* at 32 (Letter from USACE acknowledging drawing discrepancies).
[24] R. Doc. 24-1.

7

*Inc.*, Target Construction, a subcontractor, sued David Boland, Inc. under the Miller Act, as well as for breach of contract. Boland and the surety moved to stay the case based the language in its subcontract with Target, language identical to the subcontract at issue here. No. 11-2813, 2014 WL 345293, at *1-2 (E.D. La. Jan. 30, 2014). Relying on the language in Paragraph 13A and 23 of the subcontract, the court stayed the matter because "these provisions are clear and unambiguous and must be enforced." *Id.* at 2. Other courts stayed Miller Act claims in similar situations with similar contract language at issue. *See, e.g, Gabriel Fuentes Jr. Const. Co. v. Carter Concrete Structures, Inc.*, No. 14-1473, 2014 WL 7046519, at *5-7 (D.P.R. Dec. 12, 2014) (granting stay of Miller Act proceedings between general contractor and subcontractor based on stay provision in subcontract); *Bhate Envtl.*, 2016 WL 544406, at *3 (same); *see also United States v. Balfour-Walton*, No. 16-2484, 2016 WL 7229269, at *2-4 (D. Kan. Dec. 14, 2016) (vacating Magistrate Judge's order denying request for stay in contractor-subcontract Miller Act dispute because Magistrate Judge did not properly consider language in subcontract when deciding if stay was appropriate).

Further, the Court finds that judicial economy will be served, and that parties will not be unduly prejudiced, by a stay. In terms of judicial economy, the use of the contract dispute resolution procedure may resolve all or part

8

of the dispute, making further proceedings limited or unnecessary. *See Bhate Envtl.*, 2016 WL 544406, at *4 (finding that stay is supported by judicial economy). In terms of prejudice, while completion of the dispute resolution procedure will undoubtedly delay this matter, the delay was a reasonably foreseeable event given the language of the subcontract, and it does not rise to a level sufficient to deny the stay. *See id.*; *Gabriel Fuentes*, 2014 WL 7046519, at *6 (rejecting argument of prejudice based on delay). Further, if the dispute resolution procedure does not resolve GLF Construction's claims, its Miller Act claims will not be barred or waived. *See, e.g.*, *United States, for & on behalf of Portland Const. Co. v. Weiss Pollution Control Corp.*, 532 F.2d 1009, 1012 (5th Cir. 1976); *United States v. Dick/Morganti*, No. 07-2564, 2007 WL 3231717, at *3-4 (N.D. Cal. Oct. 30, 2007) (noting that stay pending contractual dispute resolution procedure will not waive subcontractors' right to bring subsequent Miller Act claim).

Based on the language in the subcontract and the above caselaw, the Court grants defendants' motion to stay the proceedings pending the completion of the dispute resolution procedure in Paragraph 13A.

9

### III. CONCLUSION

For the foregoing reasons, defendants' motion to stay is GRANTED pending the completion of the contractual dispute resolution procedure. This matter is administratively closed pending the stay.

New Orleans, Louisiana, this __7th__ day of March, 2017.

_____Sarah Vance_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE